IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:17cr102-MHT |
| | ) | (WO) |
| KENDALL DEWIGHT SHINE | ) | |

OPINION AND ORDER

Defendant Kendall Dewight Shine was indicted for being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). Following his arrest, a United States Magistrate Judge held a hearing and ordered him to be detained pending trial. Pursuant to 18 U.S.C. § 3145(b), Shine has filed a motion asking that this court review the magistrate judge's detention order de novo.

After an independent and de novo review of the transcript of the testimony presented to the magistrate judge, as well as additional evidence that was not before the magistrate judge (including that presented by the parties in briefings and in subsequent testimony before this court), the court will allow Shine's

release, albeit with the stringent requirements that he be generally confined to his home, subject to location monitoring, drug treatment, and drug testing.

## I. Legal Standard

When the government seeks to detain a defendant pending trial, the court must determine whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The burden is on the government to prove with clear and convincing evidence the presence of a flight risk or dangerousness to any other person or the community. United States v. King, 849 F.2d 845, 488-491 (11th Cir. 1988) (setting forth procedures for district courts to follow on motions to revoke or amend detention orders entered by magistrate judges). In determining whether pretrial detention is appropriate, district courts have "substantial latitude." Id., 849 F.2d at 487.

The court must consider four factors in making its § 3142(e)(1) determination: (1) the nature and circumstances of the offense charge; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) the nature and seriousness of the danger that would be posed by the person's release. § 3142(g). However, consideration of such factors does not "modif[y] or limit[] the presumption of innocence." § 3142(j).

The government and Shine agree that this court's review of the magistrate judge's detention decision is de novo. <u>United States v. Hurtado</u>, 779 F.2d 1467, 1481 (11th Cir. 1985) (stating that the district court "is not constrained to look for abuse of discretion or to

defer to the judgment of the prior judicial officer" when reviewing detention decisions). The reviewing court may also consider new evidence, as it did here. <u>King</u>, 849 F.2d at 491.

II. Discussion

The government and Shine agree that Shine does not pose a flight risk. Instead, the government argues that Shine is a danger to the community. Therefore, the court is tasked with determining whether the government has proved with clear and convincing evidence that no combination of release conditions would reasonably assure the safety of any person or the community.[1]

---

1. Section 3242(e) imposes a rebuttable presumption of dangerousness if the defendant was convicted of, or if there is a probable cause to believe that the defendant has committed, certain types of serious offenses. 18 U.S.C. §§ 3142(e)(2) & (e)(3). The offense with which Shine has been charged and his criminal history do not subject him to the rebuttable presumption of dangerousness.

4

**The nature and circumstances of Shine's alleged offense**: According to the testimony of Montgomery Police Officer Jeffrey Ioimo, Shine was arrested on November 30, 2016, when two police officers smelled marijuana while conducting a traffic stop. During a subsequent search of the truck, the officers found a loaded gun under his seat, as well as a digital scale and a razor blade with white residue. During Agent Ioimo's interview with Shine following his arrest, Shine admitted to using marijuana and cocaine earlier that day; he also stated that he had the gun because his girlfriend's son was involved in a gang conflict in Montgomery and because of the type of people who come into his hair-cutting business. There was no other evidence that elaborated on the nature of the gang conflict.

While Shine's reasons for having the gun--wanting protection due to his girlfriend's son's conflict and for his business--raise some concern that he may be exposed to violence, there is no evidence that Shine is

5

involved in gang-related activities or significant and widespread drug-related activity, and there is no evidence that his gun was present during his drug use.

The weight of the evidence: The weight of the evidence against the person should be considered only to the extent that it is relevant to the likelihood that the defendant will fail to appear or pose a danger to the community. See 18 U.S.C. § 3142(g). While the weight of the evidence against Shine is substantial, that does not mean that no combination of conditions can reasonably assure community safety. See United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985) (allowing the weight of the evidence to be dispositive of the detention outcome would amount to "impermissibly mak[ing] a preliminary determination of guilt").

The history and characteristics of Shine: To be sure, Shine was previously convicted of cocaine trafficking and being a felon in possession of a firearm. However, over 12 years have passed since these convictions. The government also noted that

Shine did not admit using cocaine to the probation officer. However, he did candidly admit to using cocaine to the police officer who arrested him.

Shine also successfully completed three years of supervised release in 2012, thereby demonstrating that he can be effectively supervised while on release. He has also not been charged with any crimes since 2012 until the current offense.

Other characteristics of Shine pertinent to this inquiry include that he has close ties to family members who live in the local community; that he has spent his entire life in and near the city of Montgomery; and that he has been employed as a barber.[2] Furthermore, Shine now has at least one relative who

---

2. The government relied on the fact that probation could not verify his employment because Shine's mother, Valerie Hall, stated to probation that Shine's haircutting business is no longer in operation. Hall clarified during the detention hearing that Shine's regular place of business is currently closed for remodeling but that he has been cutting hair at her house.

does not own firearms and is willing to house him pending trial, which is evidence that the magistrate judge did not have at the time of the detention hearing. Subject to confirmation by a pretrial services officer, it appears that his aunt Cassandra Shine's residence would be a suitable place for Shine pending trial: not only does she not own firearms, but she also stays home most of the day due to her disability, a circumstance that would allow her to monitor him closely.

<u>The nature and seriousness of the danger Shine's release would post to the community</u>: There is no evidence that Shine poses a violent threat to any particular person or the community in general. No one testified to fearing him or to his having any history of violence; no evidence showed that he is engaged in significant and widespread drug or firearm-related offenses.

Admittedly, 'danger to the community' should be read broadly so as to include "the danger that the

defendant might engage in criminal activity to the detriment of the community." King, 849 F.2d at 487 n.2. And, for this reason and in light of the above observations, court is unwilling to release Shine with only the standard conditions of supervised release. The court agrees with the government that substantial evidence supports Shine's possession of a gun and drug use. The court is also troubled that this is the second time that he has been charged with being a felon in possession of a firearm.

Nevertheless, the court believes that, in Shine's case, certain additional, stringent conditions "will reasonably assure ... the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The first is that he be confined to his home and allowed to leave only with the permission of his pretrial officer. Shine will therefore not have an opportunity to engage in illegal activity, but will have the opportunity to work. It is in the interest of the community that Shine is allowed to work if he can work. The second is

that he be subject to location monitoring, so as to assure that his whereabouts are known at all times. And the third is that he be subject to drug treatment and drug testing. It is in the interest of the community that his apparent drug problem be aggressively treated as soon as possible. The court believes that this combination of conditions will adequately assure the safety of the community, especially given Shine's history of compliance with release conditions.

Considering all the evidence presented, the court is not convinced that there is clear and convincing evidence that no combination of conditions can reasonably assure community safety.

* * *

Accordingly, it is ORDERED that:

(1) The motion to revoke the detention order (doc. no. 17) is granted.

(2) Defendant Kendall Dewight Shine shall be released from detention pending trial, subject to home detention (except as otherwise allowed by his pretrial officer), the location monitoring program, immediate drug treatment, and periodic drug testing.

(3) Defendant Shine is to stay with his aunt, Cassandra Shine, subject to his pretrial officer having first determined that the location is suitable.

(4) The United States Magistrate Judge shall arrange for defendant Shine's release subject to the 'standard conditions,' the additional conditions set forth in this order, and any other conditions the magistrate judge believes to be appropriate.

DONE, this the 27th day of April, 2017.

                                      /s/ Myron H. Thompson
                                  **UNITED STATES DISTRICT JUDGE**